Good morning, Your Honors. Aurora Buick on behalf of Appellant Mr. Tizoc. May it please the Court. At its core, the plea agreement signed by Mr. Tizoc, his counsel, and the government guaranteed that all parties would recommend that certain guideline provisions applied and that no others would apply that increased his maximum exposure. Mr. Tizoc was denied the benefit of that bargain. Read in the light, most favorable to Mr. Tizoc, the appellate waiver here does not bar his claim of ineffective assistance of counsel. Moreover... What do you mean by read in the light, most favorable? What are you reading in the light most favorable? The section that says that he doesn't waive a collateral attack to his sentencing based on ineffective assistance of counsel. Okay. But this isn't a collateral attack. This is a direct appeal. Are you arguing that this is a collateral attack? I believe read in the light, most favorable to Mr. Tizoc, a reasonable defendant would construe that as an attack not directly on the sentence itself as being unreasonable, but an attack on the representation that he received could be deemed a collateral attack. That has some pretty broad ramifications. Is there any case law you have to support that? Just U.S. v. Clark, Your Honor, saying that, or maybe Clark v. U.S., saying that the appellate waiver must be read in the light most favorable to the defendant. I'm sort of confused about why we're in this world. My understanding is that ultimately your issue comes down to whether the government abided with the plea agreement or not. I believe the primary claim, Your Honor, is with the ineffective assistance of counsel. But the ineffective assistance of counsel was not objecting to the government's noncompliance with the plea agreement. What is the ineffective assistance? I believe the primary ineffective assistance here is filing a sentencing memorandum saying that the defense counsel agrees with the application of an importation and role enhancement not contemplated in the plea agreement. I believe this is defense counsel breach, first and foremost. But I thought that the government stood by its obligation to recommend 188 months, and therefore it didn't breach the plea. So you're saying that the plea agreement got breached by ineffective assistance of counsel? Is that the argument? I thought your argument was it was breached because he failed to file a notice of appeal. That was one of the claims considered by the district court and is why after a collateral attack did occur, it got back here. One of the four claims was also with regards to the recommendation of enhancements that weren't in the plea agreement. I see. So you're not claiming the government failed to comply with the plea agreement. That is Mr. Tuzolk's second claim, and that is under plain breach. But the separate, and I believe that... But how did the government breach if it stood by its obligation to recommend 188 months? I mean, then this comes down to whether or not the government can honestly or has a duty of candor to the court to answer any questions that the court may have with regard to the defendant's conduct. And the plea agreement contemplated that, that the government was free to address those issues. Yes, Your Honor. I believe the primary breach is actually with regard to Section 10A of the plea agreement with regards to the guideline provisions that would be recommended. When government counsel stood up and took advantage of defense incompetence and said, actually, Your Honor, the defense is arguing for the importation and role enhancements before saying that's clearly not unreasonable and then articulating facts supporting those enhancements. So would you have the same argument if defense counsel had argued for 120 months, a downward departure, but had not asked for the enhancements? Your problem is what was done in the middle there, that he actually agreed to the enhancements. Yes. But what about the government's position that in some ways it was a strategic step because it was absolutely obvious that these enhancements applied? I believe it was defense counsel breach. If it were obvious that the enhancements applied, then all parties might have considered them during the plea negotiation. But he agreed in the statement of facts in support of the plea that he was involved in large quantities of drugs that were being imported from Mexico. So how could defense counsels call it a concession or a ceding to that fact amount to a breach? Section 10A of the plea agreement goes to what? You say 10A. Give me a page number. I don't see any A's. I see a section. Well, maybe I'm looking at 11, which is the? That's 33 of the excerpts of the record, sentencing guideline calculations, where the parties agree what specific guideline provisions will apply and no other. And this is the primary breach from defense counsel. It's saying that even though my client gave up constitutional rights to have these specific guideline calculations apply, I'm going to go ahead and give four. But why isn't it just a strategic decision? At first blush, I was concerned about the same thing. But then as I looked into it, it's absolutely obvious that these apply. Why can't defense counsel make a decision that he's going to also have some candor with the court and say, look, I get that my client probably falls within these enhancements, but even given that, I'm still going to ask for 120 months because of the downward departures. It seems like, at the end of the day, he still argued for a downward departure to 120 months. I believe here, Your Honor, that there's actually also a contractual obligation. Mr. Chizuk himself signed an agreement saying that these guidelines weren't going to be argued for. And defense counsel opened the door to that, waiving any claim for him to object based on importation and role, and then opening the door for the government to come in and say, Your Honor, it's defense counsel actually arguing for these, and they're not unreasonable and clearly under the facts. But the district court departed downward below the bottom of the sentencing guideline range, did it not? Below the bottom, including these two additional enhancements, the plus four. And notably here, the government circles... If those enhancements had not been included, would the guideline range have still encompassed the sentence that the district court actually imposed, or would it have been below even that guideline range? I believe it stays within the range, which is why we're having the discussion about whether the appellate waiver bars the ineffective assistance claim. Well, I guess my question really is, where's the prejudice here? If the guideline range, as you would urge it to be calculated, would still result in a sentence that fell within the lower guideline range?  Because once the district court saw the offending statements, in other words, the sentencing document saying, We're going to agree with the importation and role enhancements, the prejudice was already manifest because Mr. Chizoff has already denied the benefit of the very bargain he signed with his attorney and the government. I keep going back. Look at pages 27 and 28, pages 4 and 5 of the plea agreement on the admissions of the factual basis that he obtained approximately 15 to 20 pounds of methamphetamine per week from several suppliers, that the total exceeded 45 kilograms of methamphetamine. The district court here was dealing with huge quantities. If he'd been asked, maybe another way to phrase that is if he had been asked, defense counsel had been asked by the judge, Do you think these enhancements should apply? What would the response have been? It could have been, Well, it wasn't in the agreement. But on the substance of it, as I think Judge Talman's pointing out, what could defense counsel have said? Well, interesting here, Your Honor, and on the strategic point, as the government notes in its briefing, after essentially recommending that these role and importation enhancements apply, the government completely sidestepped the question and then made a half-hearted argument that they shouldn't apply, which I think demonstrates that it wasn't a strategic argument by defense counsel. Can we go back to the plea waiver then, the plea agreement waiver? On this version of the IAC claim, you need to come outside the appeal waiver. So that's where you started. And your argument seems to be that this comes within the collateral attack provision. Is that your argument? Both that and then here we have the special circumstance where the district court said that Mr. Chizok may raise his claims of ineffective assistance on direct appeal. And I would like to reserve that. When did he say that? In the two different memorandums that were written in response to the habeas petitions. Well, he could raise it. I mean, that's a different question from whether it would be recognized. But all right, go ahead. I think I'm already over time, so I'd like to start. I know. Thank you. Good morning. May it please the Court. Mark Ray for the United States. Your Honors, this case does have somewhat of an unusual procedural history, but the government's position is that no matter which way you look at it, the judgment should be affirmed. Now, our first and primary point is that this case isn't even properly before this tribunal, which is why we initially moved to dismiss under the appellate waiver. The appellate waiver allows for a collateral attack based on ineffective assistance of counsel. That's what the defendant filed, and I believe he raised four claims. The unusual thing all comes from the Sandoval-Lopez problem, which is basically as soon as a defendant makes a post-sentencing claim that I asked my attorney to file an appeal and he didn't, Sandoval-Lopez says, even if we assume the best appellate waiver in the world, there's a two-part process that happens. You know, either the state, we have a hearing as to whether that actually happened, or the state can go ahead. You're talking about the timely appeal. But that's been resolved, right? You're talking about the first, yes, but I think what you're trying to explain is that that led to the later problem. Is that what you're trying to say? Yeah. The only reason I'm saying here is because, you know, your question, Judge Brezon, basically is like why are we even, why doesn't this fall within the appellate waiver? It's because of this unusual thing where under Sandoval-Lopez, because the claim that was made, the district court was obligated once the state chose option two to allow the direct appeal, which is why we're here. But it doesn't mean that the defendant has a right of appeal. And we still believe under the plain language of the appellate waiver, the high end of the government side sentencing guidelines range was 235 months. Defendant got 200 months. That clearly didn't exceed it. So your understanding of the language in the order is about, that says that he may appeal, just means you can file the piece of paper that's the appeal. Yeah, exactly. Because even when, you know, you reread Sandoval-Lopez a few times, that's what Judge Kleinfeld basically says in there, is that the government may decide that it's less work to go ahead and let this formality happen and then move to dismiss. So we did that. But there is a line of cases that says that when the district judge tells the defendant that he can appeal, that overrides the plea waiver. So you have two. And I understand exactly. It's unusual that there is tension there. But our position is, you know, I think I used the terminology. I mean, when the only reason you're on appeal is under the strictures of Sandoval-Lopez, it can't be then that an appellate waiver goes out the window. Because then every single plea or appellate waiver in a plea agreement would be, you know, illusory. Because all it would take would be for a defendant to say, you know what, even though I told the district court at the end of sentencing, which is exactly what happened here, I've waived my right to appeal, I can go ahead and make a claim that I asked my lawyer to anyway. But, you know, I think our position is that this Court still has the power to find that there was waiver, and then this goes back to the district court, and the defendant is free to raise these claims into 2255. Now, even if you don't find a waiver, there seems to be a common thread to both of these claims of ineffective assistance of defense counsel and a claim of breach by the government. Of course, the government's position on ineffective assistance of counsel issue would be first and foremost the black-letter principle that, I mean, as we stand here now, this is definitely a direct appeal. And the case law of this Court has said usually these are not cognizable on direct appeal because we don't know what the defense counsel's motivation was. So you would say even aside from the waiver, it's not cognizable? Exactly. You know, I'm just saying, right, and if we get to the... So can I ask a question about that? Because, I mean, if we don't agree with the waiver, we may or may not agree with the waiver. If we do agree with the waiver, would we still want to get into some of the substance and the alternative? Or would that be... The government's position is, no, we shouldn't because ineffective assistance of counsel claims is not properly before the Court at this stage. We need to wait for habeas. If we said something on that, would that prejudice habeas in an opinion? Or you think that habeas would still be okay? Well, let me ask about that because it is an odd procedural posture. If the sole role of this Court under Sandoval-Lopez is simply to examine the enforceability of the appellate waiver on direct appeal and we decide it is enforceable, the district court did entertain a 2255 petition, which it then, in essence, certified to us under the second prong of the Sandoval-Lopez analysis. Would he have to seek permission to file a second or successive habeas petition if we enforce the appellate waiver on direct appeal on this procedural posture? I'm not exactly sure, but my instinct tells me no for two reasons. First of all, the district court did expressly tell the defendant, you know, if you come back, you're free to raise these claims again. The other reason I would say not is because the district court deferred ruling on those other claims. In other words, the other claims were in the original 2255 and they haven't been ruled upon. Correct. And they're not moved. Right. It seems if we say anything, we should say that there is, in fact, not a second and successive. It's still the same petition. Yes. That would be the government's position. Okay, so if we were to enforce and dismiss, what would the petitioner be free to raise back in the district court? Everything including the failure to file a notice of appeal or just the enhancement position sentencing IAC? I mean, I'm thinking maybe just the second, Your Honor. And I know in excerpts of Record 129 through 30, that's where the district court enumerated. But the failure to file the appeal has already been adjudicated or not adjudicated but dealt with, so I don't see why that would be open. And when Judge Shulman asked whether that issue would still be open, but it couldn't be because it hasn't. Or put another way, it had no prejudicial effect. They did get to file the appeal, so that doesn't seem right. Well, I think that was the second option that he had. So the district court, I think I'm with you. So the district court would then be free to consider, as in any 2255 petition, whether there was ineffective assistance of counsel based on what defense counsel did or did not do in a sentence. And that's within the plain language of the appellate waiver, because it's the one thing it accepts is a collateral attack based on ineffective assistance of counsel. All right, can we briefly discuss the second issue, which is whether the government breached the plea agreement? Your Honor, the government's position is that no such breach happened. Here in the plea, you know, it's true that the parties agreed to just two guidelines enhancements, the base offense, I believe the 38, and the minus 3 for acceptance. When the government filed its sentencing summary chart, it didn't ask for any other enhancements. When it came to the time of the sentencing hearing, the defense already had a sentencing memorandum on file requesting 120 months, a massive variance from whichever guideline range this court wants to consider. Our position is basically twofold. One, when directly asked by the district court, and the district court flagged this in almost the second, basically in its second breath at sentencing. It said, good morning, I've read all the papers, I've seen the recommendations, I want to hear from the parties on these two enhancements. At that point, the prosecutor said, look, he moved quickly on it. He said it wouldn't be, you know, not unreasonable. But he said, I'm sticking, the government's not recommending those. And even if the court were to impose those two enhancements, we would ask the court to use its discretion to vary downward under 3553. Now, under United States v. Moschella, this court has held that where a defense counsel requests lower than the low end in a plea agreement, the government is free to then refer to derogatory facts to say, you know, district court, stay at the low end, there's no reason to go lower. And here, you know, and again, this is on plain error review, because there was no objection on breach below. I think when you look at this record, the prosecutor just basically touched those guidelines issues quickly, but then ended up saying eight separate times, 188 months is the right sentence. Not only that, the prosecutor actually echoed at least four or five of the mitigating equities that the defense was arguing, the fact that no violence was used, the fact that the defendant pled guilty at the soonest opportunity, that the fact that the defendant was instrumental in helping his mother and brother also plead. So when one looks to the breach cases, I was rereading, I think it was either Whitney or Heredia the other day, the opinion says, you know, one's left to wonder why the government in that case even agreed to a low end, because they never even mentioned a single mitigating factor. Not so with this record. Can I ask, I think your points are all well taken, and the government seemed to act entirely reasonable here. What's odd is you have the defense counsel who actually agrees to the enhancements that weren't even in the agreement. I mean, is your view that that is a strategic decision by defense counsel, or did defense counsel, I mean, maybe it's not before us, but it does seem odd. And what's the government's position on that? Look, you know, and Supreme Court in Cullen v. Penholster says when we're talking about ineffective assistance, we have to, you know, entertain the wide range of possible reasons. I would say this. This case, with the two-year conspiracy, with the 25 kilos per week, this defendant was looking at a lot of time. The defense strategy was a variance. The guidelines are only the initial starting point. They're just to be kept in mind throughout. Obviously, anything having to do with these two adjustments for which there was overwhelming evidence, if I were a defense attorney, I'd say, you know what, let's just move past this quickly, and then let's get to the meat of my 3553. And that seems to be reflected not only in the defense sentencing memorandum, but also the transcript of the sentencing. I mean, you know, the defense lawyer basically spends as little time as possible on those enhancements, and at the sentencing hearing, six straight transcript pages detailing equity. But he didn't have to say anything about those enhancements, right? He didn't need. Well, but I thought the district court asked. No, I'm talking about in the written document, which is where he actually. Yes, defense counsel, true. Right. I mean, he just didn't need to say anything. Well, I mean, that's true. But on the other hand, I think it's possible, as we pointed out, anytime you object to an enhancement or you object to a PSR, now the probation officer will usually file an addendum. And in that addendum, you run the risk of the defense or of the probation officer putting all the aggravating facts front and center. But, again, he didn't have to do anything, did he? I mean, the district court, he didn't have to object to it either. He just didn't need to talk about it. He could have done just what the government did. I mean, it's odd that the government, you know, the defense counsel in some ways was more up front with the court than the government was, which helps you. But this all occurred after the client admitted to the facts at the change of plea hearing that are recited in the plea agreement. I mean, from defense counsel's standpoint, you look like an idiot in front of the judge to try and backtrack from what your client admitted to when the court took the plea. I mean, there's that. And then the last thing I would just point to. Just one other thing. I mean, it seems that what this really, this last discussion suggests most heavily is that it should be done in collateral attack. Yeah. I mean, we don't know why he did that. I agree. Like, even in our practice session for this, it's like the more you get into the facts, that's the exact reason why these kind of facts need to be fleshed out. Okay. You're over your time. Thank you very much. Thank you. I'll give you a minute in rebuttal. Go ahead. Thank you, Your Honors. I think here there is no reason to send a Spanish-speaking indigent defendant back to try to do a habeas corpus petition pro se again. But we have two problems. One is the plea agreement, which seems to contemplate that. And, two, the general rule that you don't do IACs on direct appeal. And I think here the district court's invitation allows this. And also here under Gunn v. Ignacio. What invitation? I'm sorry. The district court's invitation to raise the claims of ineffective assistance on direct appeal in the 2255 rulings. And here under Gunn v. Ignacio, the courts have held it is plain breach of a plea agreement to file a memorandum agreeing to sentencing guidelines that weren't contemplated in the plea agreement. Just here it's defensive counsel. You know what's odd about your argument is we constantly hear arguments that the government has breached the plea agreement. I can't remember the last time I heard counsel argue that the plea agreement was breached by the defendant and his counsel. And I think this is because a competent counsel would never file a sentencing memorandum recommending. After your client has admitted that he engaged in a drug trafficking enterprise involving 25 kilograms a week for two years? Those were the very facts contemplated in the plea agreement that was signed. But don't those facts support the enhancement? Frankly, I'm wondering why the district court even asked counsel a comment on it because it seems pretty obvious to me. If those enhancements were unequivocally necessary, competent counsel would have made sure they were included in the plea agreement and dealt with. Competent counsel wouldn't have his client give up certain rights so that they weren't included and then say under those same facts that you just admitted to in that same agreement, I'm going to go ahead and say it should be four points higher. But if the defense strategy was to focus on the 3553A factors in mitigation, that's not a wholly irrational position to take, is it? It's not irrational to argue for a variance, but it is irrational and incompetent to admit to four points higher than what your client signed for and agreed for. So why shouldn't we leave that to the development of an enhanced factual record on a 2255 proceeding? Your Honor, I would say under Gunn v. Ignacio, it is plain breach and plain breach should apply to a defense counsel just as it should apply to government counsel. Okay. Very quickly, where did the, in his order, did the court, you say, invited him to appeal the ISC? I have it cited for excerpts of the record, pages 131. All right. So I'm on page 131. If the government does not object to the court vacating and reentering the criminal judgment, he may raise these grounds on direct appeal. The defendant may raise those grounds on his direct appeal, and if they are rejected, he may raise them in a timely and appropriate 2255 motion thereafter. Right. So that goes back to the same point again. That's what we're giving you the option to do. I mean, it's not like he's out of court. He won't have a CJA counsel. He's not an English speaker. I've been appointed by the court system to help him in this matter. The district court has said, here, counsel, assist in raising these ineffective assistance of counsel claims on direct appeal, which is what I have done. And I don't think it merits wasting more time to send him back just to have these same claims put before the district court and then this court again. But isn't that what we said in Sandoval-Lopez? It may not make much sense to have him go up on direct appeal just so we can enforce the appellate waiver and send him back to the 2255 petition, but that's how we read the law. That was just with regard to the limited scope of the failure to file a notice of appeal. We already have this. As Your Honor said, we dealt with this. Perhaps it's unsurprising that after breaching the plea, defense counsel failed to file a notice of appeal raising the Sixth Amendment ineffective assistance of counsel claim. But here we have other plain instances undergone via Ignacio of ineffective assistance of counsel, of breach by defense counsel. Okay. Thank you very much. This case turns out to be relatively complicated for a simple case. The case of United States v. Chisok is submitted.
judges: Berzon, Tallman, Nelson